UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Scottsdale Insurance Company,

                                           Plaintiff,

                          vs.

GS Thadius LLC d/b/a The Bar, NEM Inc., d/b/a Sandy Monkey, William J. Muse, Sharon Cumbie, and Christine Michelle Acosta, as Personal Representative of the Estate of Michael Jason Dunn,

                                       Defendants.

Civil Action No.: 4:18-cv-00099-AMQ

**OPINION AND ORDER**

Before this Court is the Motion for Summary Judgment of Defendant Christie Michelle Acosta, as Personal Representative of the Estate of Michael Jason Dunn ("the Estate") (ECF No. 13), Plaintiff Scottsdale Insurance Company ("Scottsdale")'s Motion for Summary Judgment (ECF No. 72), and Scottsdale's Motion to Strike Third Defense or Alternative Motion for Partial Summary Judgment (ECF No. 75.) The Court held a hearing on these motions on May 22, 2018, and has considered the arguments of the parties, as well as the briefing submitted and the entire record in this case. For the reasons set forth herein, this Court DENIES the Estate's Motion for Summary Judgment (ECF No. 13), GRANTS Scottsdale's Motion for Summary Judgment (ECF No. 72), and finds as MOOT Scottsdale's Motion to Strike Third Defense of Alternative Motion for Partial Summary Judgment (ECF No. 75.)

**FACTUAL AND PROCEDURAL BACKGROUND**

The motions before the Court arise out of a declaratory judgment action commenced by

Scottsdale pursuant to 28 U.S.C. § 2201 against defendants GS Thadius, LLC d/b/a The Bar ("The Bar"), NEM, Inc. d/b/a/ Sandy Monkey ("Sandy Monkey"), William J. Muse ("Muse"), Sharon Cumbie ("Cumbie"), and Christine Michelle Acosta, as Personal Representative of the Estate of Michael Jason Dunn ("the Estate") (collectively, the "Defendants") for the purposes of determining whether the Assault and/or Battery exclusions of two insurance policies issued to The Bar and the Sandy Monkey respectively, preclude coverage for the Estate's claims in connection with a lawsuit filed in the Court of Common Pleas for Horry County brought by the Estate on July 21, 2017 ("Underlying Lawsuit"). The Court's jurisdiction is based on 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000. (ECF No. 1 at ¶ 9.)

The Underlying Lawsuit alleges that Michael Jason Dunn ("Decedent" or "Estate's Decedent") sustained injuries when he was run over by an SUV driven by Janelle Castillo ("Castillo") after being knocked unconscious during a brawl that occurred in the parking lot of the Sandy Monkey. (ECF No. 1-3 at ¶¶ 11-12.) According to the Underlying Lawsuit, Castillo had been drinking heavily at two or more bars prior to the incident. (ECF No. 1-3 at ¶¶ 13-14.) According to the declaratory action complaint, Scottsdale is providing a defense to The Bar, the Sandy Monkey, Muse, and Cumbie in the Underlying Lawsuit under a reservation of rights. (ECF No. 1 at ¶ 19.) Scottsdale issued the policies of both The Bar and the Sandy Monkey for commercial general liability ("CGL") and liquor liability coverage, subject to the terms, conditions, limitations and exclusions of the Policies. (ECF No. 1 at ¶ 20.) An Assault and/or Battery Exclusion applies to both Policies' general liability coverage parts and liquor liability coverage parts. (ECF No. 1 at ¶¶ 23-24.) Scottsdale contends that coverage in this case is excluded under the CGL coverage parts of The Bar Policy and the Sandy Monkey Policy

pursuant to the Liquor Liability Exclusions, and further contends that coverage is excluded under the CGL coverage parts and liquor liability coverage parts of The Bar policy and the Sandy Monkey Policy pursuant to the Assault and/or Battery Exclusions (ECF No. 1 at ¶¶ 29-30.) Accordingly, Scottsdale seeks a declaration that it has no defense or indemnity obligation to Defendants under the respective Policies. (ECF No. 1 at ¶ 31.) Scottsdale also contends that the claims and damages are precluded under the Policies' punitive or exemplary damages exclusions (ECF No. 1 at ¶ 32.)

The Estate moves for summary judgment on the grounds that the incident underlying the declaratory judgment action falls within the insuring agreement, meaning that the Assault and/or Battery Exclusions do not preclude coverage. (ECF No. 13-1.) The Estate, therefore, contends this declaratory judgment action is subject to dismissal. In what is effectively a mirror image motion, Scottsdale also moves for summary judgment, maintaining that the undisputed material facts demonstrate that the Underlying Lawsuit arose out of an assault and/or battery as those terms are used in the respective policies. (ECF No. 72.) Thus, Scottsdale contends it is entitled to a declaration that the alleged damages in the Underlying Lawsuit are excluded from coverage, and, therefore, Scottsdale does not have any defense or indemnity obligations with respect to the suit. (ECF No. 72 at 1.) In sum, both Scottsdale and the Estate contend there are no genuine issues of material fact and ask this Court to determine, as a matter of law, whether (or not) Scottsdale has a duty to defend or indemnify Defendants in the Underlying Lawsuit.

Scottsdale also moves to strike the Third Defense of Defendants the Sandy Monkey, Muse and Cumbie asserted in their answer to the complaint, or alternatively, for partial summary judgment, on the ground that these Defendants have not offered any facts to support an affirmative defense of waiver on the part of Scottsdale. (ECF No. 75.) Replies and responses

have been filed and the Court has thoroughly considered them in reaching its conclusions as set forth herein.

## STANDARDS OF REVIEW

**Summary Judgment:**

A court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate.

Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

Further, at the summary judgment stage, the judge is not to weigh the evidence, but rather determine if there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, at the summary judgment phase, "[t]he pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, No. 17-1503, 2018 WL 1916320, at *3 (4th Cir. Apr. 24, 2018)(internal citation and quotation marks omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1996).

Both the Estate Scottsdale are seeking summary judgment. Thus, they both assert that there are no genuine issues of material fact in dispute. In ruling on cross-motions for summary judgment, the Court must apply the same standard as it does for individual summary judgment motions. *Creech v. N.D.T. Indus., Inc.*, 815 F. Supp. 165, 166–67 (D.S.C. 1993) Accordingly, the "Court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Id.*

**Declaratory Judgment:**

The Federal Declaratory Judgment Act provides this Court with significant discretionary power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)(citing 28 U.S.C. § 2201(a)). Federal courts frequently use federal declaratory judgment actions to resolve "disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought." *Auto-Owners Ins. Co. v. Madison at Park W. Prop. Owners Ass'n, Inc.*, 834 F. Supp. 2d 437, 442–43 (D.S.C. 2011)(internal citations and quotations omitted).

The Fourth Circuit has explained that a declaratory judgment action is appropriate: (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)(internal citations and quotations omitted). The Court must also consider whether the declaratory judgment controversy can be better settled in the pending state court action, as well as the general principles of federalism, efficiency and comity when making its discretionary decision whether to entertain the declaratory judgment action. *Id.* at 256-267. After carefully considering the factors above, the Court finds it appropriate to issue a declaratory judgment relative to the narrow coverage issues presented.

## ANALYSIS

The Court first sets forth the relevant policy language and exclusion language as it pertains to the instant motion for summary judgment.

**Applicable Policy Language:**

**A. Scottsdale Insurance Company Policy to Named Insured GS Thadius, LLC c/o The Bar, Policy Number CPS2567688, Policy Period from 10/18/2016 to 10/18/2017 ("The Bar Policy").**

The Bar Policy states in relevant part:

> Commercial General Liability Coverage Form…We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….
>
> This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" (2) The "bodily injury" or "property damage" occurs during the policy period; and (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive

notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part… (ECF No. 1-1 at 15-16.)

The Liquor Liability Coverage Form provides as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. (ECF No. 1-1 at 54.)

An "Assault and/or Battery Exclusion" also applies to the policy, specifically modifying the

CGL coverage part and the Liquor Liability coverage part such that:

This insurance does not apply to "injury," "bodily injury," "property damage," "error or omission" or "personal and advertising injury" arising from: 1. Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person; 2. The attempt or failure to suppress or prevent Assault and/or Battery by any person in 1. above; 3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery…(ECF No. 1-1 at 36.)

**B. Scottsdale Insurance Company Policy to Named Insured NEM, Inc., Sandy Monkey Policy Number CPS2399002, Policy Period from March 28, 2016 through March 28, 2017 ("Sandy Monkey Policy").**

The Sandy Monkey Policy states in relevant part:

Commercial General Liability Form…We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…

This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" The "bodily injury" or "property damage" occurs during the policy period; and (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. .. (ECF No. 1-2 at 13.)

The Liquor Liability Coverage Form provides as follows:

7

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. (ECF No. 1-2 at 29.)

An "Assault and/or Battery Exclusion" also applies to the policy, specifically modifying the CGL coverage part and the liquor liability coverage part such that:

> This insurance does not apply to "injury," "bodily injury," "property damage," "error or omission" or "personal and advertising injury" arising from: 1. Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person; 2. The attempt or failure to suppress or prevent Assault and/or Battery by any person in 1. above; 3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery.

The parties agree that South Carolina law applies to the substantive insurance questions at issue in this dispute.

**Legal Standard for Construction of Insurance Policies:**

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.,* 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999). The Court must give the policy language its plain, ordinary, and popular meaning. *Id.* When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id.* The obligation of the insurer under an insurance policy is defined by the terms of the policy itself, and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White,* 301 S.C. 133, 137, 390 S.E.2d 471, 474 (Ct. App. 1990). "Insurance policies are to be liberally construed in favor of the insured," *Brooklyn Bridge, Inc. v. South Carolina Insurance Company*, 309 S.C. 141, 144, 420 S.E.2d 511, 512 (Ct. App. 1992), and "policy exclusions are construed most strongly against the insurance company, which also bears the burden of

8

establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005). "At the same time, the parties have a right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties." *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 643, 216 S.E.2d 547, 550 (1975). Further, "[w]here the terms of a contract are clear and unambiguous as a matter of law, its construction is for the court." *Black v. Freeman*, 274 S.C. 272, 273, 262 S.E.2d 879, 880 (1980).

**Application of Applicable Law to the Policies:**

Under South Carolina law, an insurer is responsible for providing a legal defense on any underlying substantive claim that creates the possibility of coverage under an insurance policy. *Union Ins. Co. v. Soleil Grp., Inc.*, No. 2:07-CV-3995-PMD, 2009 WL 8652923, at *2 (D.S.C. May 13, 2009). An insurance company's duty to defend is determined based on the allegations set forth in the underlying complaint. *See Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 387–88 (4th Cir. 2001)(interpreting South Carolina law). "If the alleged facts in the complaint fail to bring the case within the policy coverage, the insurer is free of the obligation to defend." *R. A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 277 S.C. 88, 90, 282 S.E.2d 856, 857 (1981). Otherwise, "[i]f the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct. App. 1994), writ granted in part, decision aff'd, 321 S.C. 310, 468 S.E.2d 304 (1996). The complaint is to be construed liberally, with doubts construed in favor of the insured. *Darwin Nat. Assur. Co. v. Matthews & Megna LLC*, 36 F. Supp. 3d 636, 655 (D.S.C. 2014).

Based on these principles, the Court has carefully considered the underlying complaint. The complaint alleges that "a dispute arose inside The Sandy Monkey which led to a fight…which escalated into a brawl" in the parking lot of the Sandy Monkey. (ECF No. 1-3 at ¶ 10.) It further alleges that "Decedent tried to be a peacemaker between the participants of the fight" and "in the process, he was rendered unconscious by one of the combatants and lay motionless in the parking lot." (ECF No. 1-3 at ¶ 11.) Defendant Castillo was allegedly sitting in her SUV during the fight when one of the fight participants, her boyfriend or male acquaintance, got into her car. (ECF No. 1-3 at ¶12.) Allegedly intoxicated after having consumed "large quantities of alcoholic beverages" at Defendants' bars, "she then drove off, running over the Decedent's head, causing great bodily harm which ultimately led to his death." (ECF No. 1-3 at ¶¶12-13.) The complaint alleges various causes of action against the bar Defendants and Castillo sounding in wrongful death, survival, dram shop liability, and gross negligence, among other claims.

With the underlying complaint in focus, the Court turns to the instant motions which center around a single question—what is the meaning of "arising from" in the Assault and/or Battery Exclusion of the respective Policies. The Policies specifically states that the insurance does not apply to "injury" or "bodily injury" arising from "Assault and/or Battery committed by any insured, any employee/ "employee" of any insured, or any other person." (ECF No. 1-1 at 36; ECF No. 1-2 at 43.) The term "arising from" is not defined in the respective Policies. Thus, where a term is not defined in an insurance policy, "the term should be defined according to the usual understanding of the term's significance to the ordinary person." *State Farm Fire & Cas. Co. v. Barrett*, 340 S.C. 1, 8, 530 S.E.2d 132, 136 (Ct. App. 2000).

The Supreme Court of South Carolina has considered the substantially similar phrase "arising out of" and noted that it may be interpreted in many ways. *McPherson By & Through McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 319, 426 S.E.2d 770, 771 (1993). The Supreme Court noted that "rules of construction require clauses of exclusion to be narrowly interpreted, and clauses of inclusion to be broadly construed. This rule of construction inures to the benefit of the insured." *Id.* Accordingly, the Supreme Court held that for "the purpose of construing an exclusionary clause in a general liability policy, 'arising out of' should be narrowly construed as 'caused by.'" *Id.* (finding that even under a narrow construction of the exclusion, the injury caused by the city's alleged failure to train and supervise its officers was not covered under the policy which excluded injuries arising out of the ownership of automobile). This Court must apply this narrow interpretation of the substantially similar exclusionary language in this case.

Here, Scottsdale has a duty to defend in the Underlying Lawsuit, unless the Policies' Assault and/or Battery Exclusions apply. Scottsdale contends that it has no duty to defend because the allegations and damages in the underlying suit are excluded from coverage by the Policies' Assault and/or Battery Exclusions. (ECF No. 72 at 1.) Scottsdale maintains that it is clear that the Decedent's death arose from an assault and battery within the meaning of the exclusions, i.e., the brawl that rendered him unconscious and put him in a position where Ms. Castillo could have run over him in the parking lot. (ECF No. 72-1 at 13, 15-16.) Just as vigorously, the Estate argues that the death was proximately caused by Ms. Castillo running over the Decedent in her intoxicated state which was caused by the act of the bars overserving her liquor. (ECF No. 13-1 at 7-8.) The Estate further claims that there is no evidence in the record to support an assertion that the impact between Ms. Castillo's vehicle and the Decedent was an

11

"assault and battery," as Ms. Castillo was not indicted intentional assault and battery.[1] (ECF No. 13-1 at 5-6.) As these two theories reveal, the analysis is more complicated in that there is arguably more than one "cause" of the injuries.

Scottsdale suggests that the South Carolina Supreme Court's decision in *South Carolina Farm Bureau Mutual Insurance Company v. Durham* controls in this case. *Durham*, however, discusses, but does not ultimately resolve the question of coverage "where the loss is the result of multiple causes." *S.C. Farm Bureau Mut. Ins. Co. v. Durham*, 380 S.C. 506, 512, 671 S.E.2d 610, 613 (2009). The Supreme Court recognized the majority view of "follow[ing] the efficient proximate cause doctrine which provides that in circumstances with two or more identifiable causes, the court looks to the cause which is determined to have set the chain of events in motion." *Id.* However, it ultimately found the anti-concurrent clause exclusion in that policy precluded coverage and declined to formally adopt the majority view. *Id.*

The Court takes note of the "but for" analysis described in *Durham*, but finds the cases of *Canopius US Insurance Company v. Middleton* and *Scottsdale Insurance Company v. Moonshine Saloon, LLC,* interpreting assault and battery exclusions in light of South Carolina law, most similar to the instant matter. *See Canopius US Ins., Inc. v. Middleton*, 202 F. Supp. 3d 540, 546-547 (D.S.C. 2016)(citing *S.C. Farm Bureau Mut. Ins. Co. v. Berlin*, No. 2005-UP-062, 2005 WL 7082978, at *3 (S.C. Ct. App. Jan. 25, 2005)); *see also Scottsdale Ins. Co. v. Moonshine Saloon,*

---

[1] Scottsdale does not seem to be adopting the position that the Assault and/or Battery exclusion applies based on Ms. Castillo's conduct or state of mind. It is clear to the Court that Scottsdale's position is instead that the original brawl referenced in the complaint was a "but for" cause of the Decedent's death. (ECF No. 79 at 6.) "An assault is an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct," and a battery is "the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree." *Mellen v. Lane*, 377 S.C. 261, 276–77, 659 S.E.2d 236, 244 (Ct. App. 2008). None of the parties appear to seriously dispute that the fight which rendered the Decedent unconscious was an assault and/or battery as those terms are defined under South Carolina law. (ECF No. 72-1 at 13.)

*LLC*, 228 F. Supp. 3d 554, 560 (D.S.C. 2017)("the causal link between the assault and decedent's death is immediate and direct."). Those cases drew a connection between "caused by" and the immediacy and direct nature of the damage. For example, *Canopius US Ins., Inc. v. Middleton* involved an insurer's duty to defend and indemnify based on several underlying state court actions filed against a nightclub regarding a shooting on the premises. The relevant CGL policy contained an assault and battery exclusion at issue in a declaratory judgment action brought by the insurer. The court concluded the first filed civil action alleged an injury arising from an assault or battery, in that the underlying complaint indicated that the gunfire arose from an assault or battery, even though the victim was not directly involved in the dispute. *Canopius US Ins., Inc. v. Middleton,* 202 F. Supp. 3d at 547-548. The court found that the defendant's claims arose from the "alleged assault because the assault immediately and directly brought about the injuries those claims seek to redress." *Id.* at 548. The second set of state court actions did not specify the circumstances that led to the gunfire on the night of the incident. Thus, a question arose as to the intent of the shooter in light of the state law definitions of assault and battery. Summary judgment was thus granted as to the insurer's motion relative to the first filed civil action, but denied as to the insurer's motion for summary judgment as to the second set of state court actions. *Id.* at 548-553.

An issue of intent was also raised in *Scottsdale Ins. Co. v. Moonshine Saloon, LLC*, which also involved a declaratory judgment action brought by an insurer concerning a shooting at a bar. Ultimately, the court considered the chain of events as set forth in by the record and the undisputed fact that the shooter fired the gun in reaction to being chased out of the saloon following an altercation. The court concluded that where the shooter "unintentionally struck decedent when firing 'randomly' at the side of the Saloon, the causal link between the assault

13

and decedent's death is immediate and direct…therefore the court finds that decedent's death 'arose from' the assault within the meaning of the Policy." *Scottsdale Ins. Co. v. Moonshine Saloon, LLC*, 228 F. Supp. 3d at 560.

In view of these cases, this Court must look at the relationship between the assault and battery and the ultimate injury of the Decedent. In light of the Policies' language, the Court cannot just proceed as though the brawl never happened. Thus, the Court returns to the underlying complaint itself to evaluate whether there is an "immediate and direct" link between the initial assault and the subsequent act of Ms. Castillo in running over the decedent with her vehicle. The complaint alleges that Ms. Castillo was driving off and away from the fight once her boyfriend, who had been a direct participant in the fight, entered her vehicle. (ECF No. 1-3 at ¶ 10-12.) In this light, the injury to Decedent was "caused by" him being knocked unconscious by the fight and Ms. Castillo's act of running over the decedent as she fled from the fight, at the direction of her male companion who was in the fight. (ECF No. 13-2 at 2.) Ms. Castillo's alleged conduct is neither isolated nor independent from the Decedent being knocked unconscious. Instead, the relationship between the assault and battery and the ultimate injury, based on the record before the Court, was immediate and direct. It, therefore, arose from the assault and battery as contemplated under the policy exclusion.

The Court finds the South Carolina Court of Appeals decision in *Sphere Drake Insurance Company v. Litchfield*, instructive. *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 438 S.E.2d 275 (Ct. App. 1993). In that case, Sphere Drake Insurance Company brought a declaratory judgment action to determine its obligation to provide a defense to a nightclub under a commercial liability insurance policy. The Court of Appeals concluded that the insurer had no duty to defend the underlying action under the terms of the policy. In that case, the plaintiff in

14

the underlying suit was struck by a fellow customer in a night club and was knocked to the floor. The night club bouncers approached the disturbance and removed the plaintiff out of the night club, kicking and beating him which caused him severe injuries. *Id.* The policy there also included an assault and battery exclusion which excluded claims "arising out of assault and battery, whether caused by or at the direction of, the insured, his employees, patrons, [or] any cause whatsoever." *Id.* at 313 S.C. 471, 473, 438 S.E.2d 275, 277. In reversing the lower court, the Court of Appeals recognized the "independent negligence of [the bar owners]" in failing to protect customers, train employees, among other things, but concluded that the "separate acts of negligence alleged by Litchfield are not actionable without the assault and battery, because without the assault and battery there would be no damage suffered as a result of the alleged negligence of [the bar owners]." *Id.* at 313 S.C. 471, 474, 438 S.E.2d 275, 277. Recognizing that the insured could have always obtained insurance against the excluded risk by contracting for additional coverage and paying the respective premiums, the Court of Appeals concluded that "the negligence claims are for bodily injury "arising out of" assault and battery and come within the exclusion." *Id.* The same holds true in this case. Without the assault and battery, i.e., the brawl, the Decedent would not have been knocked to the ground unconscious and subsequently run over by Ms. Castillo.

The Court has identified a case from another district which, although not binding, is on all-fours with the scenario presented in this case. In *Burlington Insurance Company v. Ceasar Salmoran d/b/a Mambo's Night Club*, 181 F. Supp. 3d 810 (D. Nev. 2015), a district court granted summary judgment in favor of the insurer in a declaratory judgment action concerning an insurance policy in the context of a night club altercation. The policy offered limited coverage for liability arising out of an assault and battery committed by someone other than an agent of

15

the night club.  Factually similar to the instant matter, two men got into a fight inside the club and were thrown out of the club into the parking lot where they continued fighting.  One of the intoxicated fight patrons and his brother got into an SUV in the parking lot. Subsequently, the intoxicated driver jumped a curb and hit a number of individuals who were not involved in the fight.  The defendants, injured individuals, argued that there were material disputes of fact as to whether the underlying damages arose of assault or battery.  The court concluded that: (1) the fact that the intoxicated driver was not formally charged with assault and battery, and (2) that hitting the injured defendants with the SUV may or may not qualify as assault and battery were irrelevant to the analysis.  *Id.* at 815–16.  Instead, the Court noted that "Defendant cannot seriously dispute they were hit because they were unfortunately caught in the crossfire of an ongoing altercation…But for the fight that started inside Mambo's and moved into the parking lot, Defendants would not have been injured. The theories of liability alleged in the complaint all rely on injuries that arose from assaults and batteries that began inside the nightclub and continued in the parking lot. *Id.* at 816. The Ninth Circuit affirmed, finding that the policy language was clear in this regard, and rejecting the claim that the injured defendants' injuries could be attributed to other distinct causes such as negligence of the club. *Burlington Ins. Co. v. De La Puente*, 719 F. App'x 615, 618 (9th Cir. 2018)(unpublished decision).  The Court finds this decision persuasive.

Based on the above, the Court finds Scottsdale is entitled to summary judgment against Defendants. The allegations and alleged damages in the Underlying Lawsuit are excluded from coverage by the Policies' Assault and/or Battery Exclusions which apply to the CGL and Liquor Liability forms.  Accordingly, Scottsdale does not have any defense obligations to any party in connection with the Underlying Lawsuit. The undisputed evidence shows that an assault or

16

battery occurred in this case and that the Decedent was injured in connection with the event. The complaint itself acknowledges that Castillo was involved, in some way, in the bar fight and altercation that took place. The chain of events is immediate and direct in that regard.

The Court has carefully considered the Estate's Motion which maintains that the Decedent's death did not "arise out of" and was not "caused by" an assault or battery, but was instead the result of the Decedent being "run over by a drunken driver to whom Scottsdale's policyholders had been [serving] alcoholic beverages." ECF No 13-1 at 13.) As has been fully analyzed above, the proper analysis for this Court in determining the applicability of the exclusions in the relevant insurance policies must take into account the initial bar fight in the sequence of events. It is important to note that this analysis is not for the purposes of determining "legal liability," as it might pertain to the Underlying Lawsuit. It is possible that Defendants have legal liability in that action. The Court takes no position on that issue. The analysis here is for the purposes of determining Scottsdale's potential obligations under the policies. (ECF No. 13-1 at 9.) "Although the injuries may have been caused by the negligent acts of the defendant, that does not necessarily mean that they did not arise out of an assault and/or battery." *Catlin Specialty Ins. Grp. v. RFB, Inc.,* No. CV 2:16-3135-RMG, 2017 WL 2493125, at *2 (D.S.C. June 8, 2017)(internal citations omitted)(declaring that the assault and battery enforcement of a CGL policy precluded insurance coverage in a matter arising out of a bar fight). Because the facts and circumstances alleged in the underlying complaint, even if proved, fall outside of the policies' coverage in that they trigger the assault and/or battery exclusion, the Estate is not entitled to judgment as a matter of law on Scottsdale's claims. Thus, the Estate's Motion for Summary Judgment is denied.

Having found that Scottsdale has no duty to defend, it also necessarily finds that it has no duty to indemnify Defendants. *See Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) ("Although an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage."); *Am. S. Ins. Co. v. Moras Roofing, LLC*, No. 2:09–cv–1966, 2010 WL 2710588, at *3 (D.S.C. July 7, 2010) (explaining that "[i]f [p]laintiff has no duty to defend...it will know it does not have a duty to indemnify"); *Canopius US Ins., Inc. v. Middleton*, 202 F. Supp. 3d 540, 546 (D.S.C. 2016)("If an insurer has no duty to defend, it necessarily has no duty to indemnify").

The events which underlie the matter before the Court are most unfortunate indeed. However, as noted above, the Court is not deciding liability for the underlying action in state court. It is only considering the coverage obligations under the Policies. In doing so, this Court is "limited to the interpretation of the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or failure of the parties to guard their rights carefully." *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct.App.1993). Here, the exclusions apply to preclude coverage for the claims asserted by the Estate in the underlying action. "In readily understandable language, these provisions exclude coverage for claims arising out of assault and battery." *St. Paul Reinsurance Co. v. Ollie's Seafood Grille & Bar, LLC*, 242 F.R.D. 348, 351 (D.S.C. 2007), *aff'd sub nom. St. Paul Reinsurance Co. v. Riviello*, 296 F. App'x 377 (4th Cir. 2008). Considering the Policies, the allegations of the Underlying Lawsuit, and South Carolina law, the Court finds that the Assault and/or Battery exclusions apply. Therefore, Scottsdale has no duty to defend or indemnify Defendants.

## **CONCLUSION**

For the reasons stated above, the Estate's Motion for Summary Judgment (ECF No. 13) is DENIED; and Plaintiff Scottsdale's Motion for Summary Judgment (ECF No. 72) is GRANTED.  For the reasons stated above, the court declares that, under the terms of the Policy, Scottsdale has no duty to defend and no duty to indemnify the Defendants in the Underlying Lawsuit.  Accordingly, the Court need not rule on Scottsdale's Motion to Strike the Third Defense or Alternative Motion for Partial Summary Judgment regarding Sandy Monkey's waiver defense and the adequacy of Scottsdale's reservation of rights letter.  That Motion is now MOOT.

IT IS SO DECLARED AND ORDERED.

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

July 2, 2018
Greenville, South Carolina